IRISH *v.* COMMON COUNCIL OF THE CITY OF MT. CLEMENS.

MUNICIPAL CORPORATIONS — PUBLIC IMPROVEMENTS — HIGHWAYS AND STREETS — CHARACTER OF IMPROVEMENTS — HOW DETERMINED.

Act No. 136, Pub. Acts 1899, chap. 24, § 3, amending the law governing cities of the fourth class (chapter 88, 1 Comp. Laws), provided that "when the owners of a majority of the lands liable to be assessed in any special assessment district * * * shall petition to the council for any public improvement except sewers, the council shall order such improvement to be made. In other cases public improvement shall be made in the discretion of the council." *Held*, that said amendment merely gives the majority of said property owners

the right to initiate such public improvements by requiring the council to act on such petition, and does not withdraw from the council the power conferred by other provisions of the charter to determine the character of the improvement.

Certiorari to Macomb; Tappan, J.   Submitted April 27, 1909.   (Calendar No. 23,348.)   Decided May 25, 1909.

Mandamus by Perry H. Irish to compel the common council of the city of Mt. Clemens to order the paving of certain streets.   There was an order denying the writ, and relator brings certiorari.   Affirmed.

*Franz C. Kuhn* and *Robert F. Eldredge,* for relator.

*Seth W. Knight* (*James G. Tucker,* of counsel), for respondent.

MONTGOMERY, J.   This is certiorari to review the action of the circuit court in refusing a mandamus to compel the respondent to order the paving of a portion of South Gratiot avenue in the city of Mt. Clemens with macadam in conformity with specifications issued by the State highway department for State reward roads.   The return to the order to show cause in the court below shows that, prior to the filing of the petition by relator, the council had, in its annual appropriation bill for the year 1908, appropriated the sum of $12,300 to pay the city's share of the paving of South Gratiot avenue, at the same time giving notice that it proposed to pave said street, and that the estimated cost of such pavement was $39,000.   By virtue of section 3180, 1 Comp. Laws, the city had given notice to the owners of lands abutting upon South Gratiot avenue to put in and lay all such sewer, water, and gas connections in front of their lands and premises as were required, and this order had been complied with.   On the 5th of November, 1908, a resolution was duly passed by the common council declaring the intention of the city to pave the portion of South Gratiot avenue in question with brick, bitulithic, westrumite, or asphalt pavement upon a

concrete foundation and with proper curb and gutter, and establishing an assessment district upon which the costs of improvement were to be assessed as a special assessment, and directing the city engineer to prepare the necessary plans and specifications in detail for such proposed pavement. Such resolution further provided and gave notice that the common council would meet on the 7th of December at its usual place for the purpose of hearing objections to such pavement, or to the assessment district, or to the plans, specifications, and details thereof as so prepared by the city engineer, and by him deposited in the city clerk's office for public examination. On the 7th of December, at the time stated, the council met pursuant to notice, and, no objections being offered, the assessment district was duly confirmed, the pavement of the street with brick, bitulithic, westrumite, or asphalt pavement upon concrete foundation, with proper curb and gutter, was ordered, the cost of said pavement was directed to be levied on said special assessment district, the plans, specifications, and details for said pavement as prepared by the city engineer were duly approved, and the board of special assessors were directed to assess the cost of such pavement in the sum of $40,790 upon the property within the special assessment district in proportion to the foot frontage upon said street. On the 21st of December, 1908, the relator, joining with those owning a majority of the foot frontage on the street, filed a petition with the council asking that the street be improved with macadam according to the specifications for macadamized roads of the State highway department.

The question presented is whether, under the law as it now stands governing cities of the fourth class, the owners of a majority of the foot frontage upon any street may, after action has been taken providing for paving a street in a certain manner, interpose and require it to be paved or improved in some other manner. Prior to the amendment of 1899, the provisions upon this subject which bear

upon the question were as follows: Section 3180, 1 Comp. Laws, provides:

"The council shall have power to grade, pave, plank, gravel, curb and otherwise improve and repair the highways, streets, avenues, lanes and alleys of the city; and for that purpose, and for defraying the expenses thereof, may divide the city into street districts."

Section 3181 provides:

"Such part of the expenses of improving any street, lane, or alley, by grading, paving, planking, graveling, curbing, or otherwise, and of repairing the same as the council shall determine, may be paid from the general street fund or from the street district fund of the proper street district, or in part from each; or the whole, or such part of the expense of such improvement as the council shall determine, may be defrayed by special assessments upon lots and premises included in a special assessment district, to be constituted of the lands fronting upon that part of the street or alley so improved or proposed so to be; or constituted of lands fronting upon such improvement, and such other lands as in the opinion of the council may be benefited by the improvement."

Section 3194 provides:

"When the council shall determine to make any public improvement or repairs, and defray the whole or any part of the cost and expenses thereof by special assessment, they shall so declare by resolution, stating the improvement, and what part or proportion of the expenses thereof shall be paid by special assessment, and what part, if any, shall be appropriated from the general funds of the city, or from street district funds, and shall designate the district or lands and premises upon which the special assessment shall be levied."

Section 3195 provides:

"Before ordering any public improvements or repairs, any part of the expenses of which is to be defrayed by special assessment, the council shall cause estimates of the expense thereof to be made, and also plats and diagrams, when practicable, of the work and of the locality to be improved, and deposit the same with the city clerk for public examination; and they shall give notice thereof and

of the proposed improvement or work, and of the district to be assessed, by publication for two weeks at least in one of the newspapers of the city, and of the time when the council will meet and consider any objections thereto. Unless a majority of the persons to be assessed shall petition therefor no such improvement or work shall be ordered, except by the concurrence of two-thirds of the aldermen elect."

Section 3196 provides:

" The cost and expenses of any improvement which may be defrayed by special assessment shall include the costs of surveys, plans, assessments and costs of construction."

By Act No. 136, Pub. Acts 1899, section 3194 was amended by prefixing thereto the following:

" When the owners of a majority of the lands liable to be assessed in any special assessment district, or part of the city which may be constituted a special assessment district, shall petition the council for any public improvement except sewers, the council shall order such improvement to be made. In other cases public improvements shall be made in the discretion of the council."

It is the contention of the relator that this amendment withdrew wholly from the common council any authority to exercise any discretion in the matter of any improvement petitioned for by a majority of those subject to special assessment for the improvement, and that it practically vests in the owners of lands subject to such assessment the full legislative authority to determine what shall be the character of the improvement. This argument is built up upon a line of cases which hold that, where the charter of a city denies the authority to the common council to enter upon any public improvement for which a special assessment is to be made, except upon petition of a certain proportion of the property owners, the council may not depart substantially from the petition in its action, and impose upon the public a different character of improvement from that petitioned for; that such legislation gives to the owners the right to negative the imposition of a tax upon them for improvements.

That is not the purpose of this legislation. The purpose of this legislation is to give to the owners of property the right to initiate improvements; and in view of the other provisions of the statute which have been retained, and which call for plans and specifications in much detail, and which provide for a review of such plans and specifications and objections by taxpayers, we cannot think it was the purpose of the legislature to withdraw wholly from the council any discretion in the matter. This view is strengthened by this consideration: It will be noticed that under the existing provisions of the statute—and they were not changed by the amendment—a large portion of this expense may be borne, and in the present case it is contended that it shall be borne, by the city at large. If this case were reversed, therefore—and the rule cannot be different from that in such suppositious case—we would have the anomaly of the owners of property abutting upon a street determining for the taxpayers at large of the city the character of an improvement which they were required to pay for. Such a construction is not to be accepted except upon a clear expression of legislative authority, and we think such expression is not to be found in the present act. The purpose of this amendment, as we construe it, was to set the council in motion in the matter of making a public improvement, and, if a majority of the owners liable to assessment for the improvement of a street petition for an improvement, it becomes the duty of the council then to act under the authority contained in the charter, and that authority includes the right to determine the character of the improvement to be made.

The order of the circuit court is affirmed.

OSTRANDER, HOOKER, MOORE, and BROOKE, JJ., concurred.